Opinion issued October 10, 2019



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00977-CV

————————————

**STADIUM MOTORCARS, LLC D/B/A CENTRAL HOUSTON NISSAN AND CENTRAL HOUSTON MOTORCARS, LLC D/B/A CENTRAL HOUSTON CADILLAC, Appellants**

**V.**

**CHRIS SINGLETON, Appellee**

---

**On Appeal from the 269th District**
**Harris County, Texas**
**Trial Court Case No. 2018-35688**

---

## MEMORANDUM OPINION

Appellants Stadium Motorcars, LLC d/b/a Central Houston Nissan and

Central Houston Motorcars, LLC d/b/a Central Houston Cadillac (collectively,

"Central Nissan") appeal the trial court's judgment confirming an arbitration award in favor of appellee, Chris Singleton. In two issues, Central Nissan argues that (1) arbitration awards that conflict with public policy may be vacated on common law grounds, and (2) the trial court erred in confirming the arbitration award because the award conflicts with Texas's public policy as an employment at-will state. We affirm.

## Background

Singleton is an automotive repair professional with more than twenty years' experience in the automotive industry. In mid-February 2016, Singleton left his job as body shop manager at Baker Nissan, a Houston area car dealership, to begin a new position at a different Houston area dealership, Central Nissan. The owners of Central Nissan own other car dealerships in the Houston area, including Central Cadillac. Singleton signed a one-year guaranteed employment contract with Central Nissan on February 11, 2016.

In his new position, Singleton's responsibilities included opening, and later managing, a new body shop for Central Nissan. Singleton's duties also included helping transfer the pre-existing collision business at Central Cadillac to the new body shop at Central Nissan.

Shortly after he was hired by Central Nissan, Singleton uncovered evidence that employees of Central Nissan and one of its sister companies were engaged in

what he believed to be criminal insurance fraud. The fraud involved the submission of fraudulent claims to insurance companies for reimbursement of repairs not actually performed. On May 2, 2016, Singleton prepared a spreadsheet summarizing the fraudulent invoicing practice and delivered it to his immediate supervisor. Singleton also informed Central Nissan's owner and controller of the ongoing fraud. Finally, Singleton advised Central Nissan's management that he was unwilling to participate in these activities. The following day, Central Nissan fired Singleton. Prior to Singleton's dismissal, no written record existed indicating Singleton had been admonished or disciplined for poor performance, or any other reason, by Central Nissan.

At the time of Singleton's hiring, Central Nissan required Singleton to sign an agreement stipulating that any disputes arising out of Singleton's employment must be submitted to arbitration. The agreement further mandated that arbitration proceedings "shall be . . . carried out in conformity with the procedures of the Texas Arbitration Act." In accordance with the agreement, Singleton brought an arbitration proceeding against Central Nissan. Singleton asserted that Central Nissan wrongfully fired him because he refused to perform an illegal act. In submitting to arbitration, Singleton and Central Nissan further agreed that the "Arbitrator's award will be binding and not subject to appeal, except for the limited grounds set forth in Texas Civil Practice & Remedies Code section 171.088." At

the conclusion of the arbitration, the arbitrator found that Central Nissan fired Singleton because Singleton refused to participate in illegal and fraudulent activity. As a result, the arbitrator awarded Singleton damages totaling $334,922.

On May 29, 2018, Central Nissan filed a petition in district court to vacate the arbitration award, asserting that the award was contrary to Texas public policy because Texas is an at-will employment state. In response, Singleton asserted a general denial and requested the court to confirm the award and enter a judgment against Central Nissan. On September 28, 2018, the court confirmed the arbitration award and entered judgment in favor of Singleton. This appeal followed.

## Discussion

In two issues, Central Nissan argues that (1) courts may review arbitration awards on common law public policy grounds, and (2) the trial court erred in confirming the arbitration award because it is contrary to Texas's public policy as an at-will employment state.

### A. Standard of Review and Applicable Law

A trial court's confirmation or vacatur of an arbitration award is reviewed de novo. *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 446 S.W.3d 58, 75 (Tex. App.—Houston [1st Dist.] 2014), *aff'd*, 518 S.W.3d 422 (Tex. 2017). Judicial review of arbitration awards is "extraordinarily narrow" because Texas law favors the arbitration of disputes. *Id.* In reviewing an arbitration award, "courts indulge

4

every reasonable presumption to uphold an award, and none against it." *IQ Holdings, Inc. v. Villa D'Este Condo. Owner's Ass'n, Inc*, 509 S.W.3d 367, 372 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The review of an arbitration award is centered on "the integrity of the process, not the propriety of the result." *Forest Oil Corp.*, 446 S.W.3d at 75.

When reviewing an arbitration award under the Texas Arbitration Act ("TAA"), a court "shall confirm" the arbitration award "[u]nless grounds are offered for vacating, modifying, or correcting an award under Section 171.088 or 171.091." TEX. CIV. PRAC. & REM. CODE § 171.087. A party seeking to avoid confirmation of an arbitration award under the TAA may do so "only by demonstrating a ground expressly listed in section 171.088." *Hoskins v. Hoskins*, 497 S.W.3d 490, 495 (Tex. 2016).

## B. Analysis

In its first issue, Central Nissan contends that arbitration awards that conflict with public policy can be vacated on common-law grounds.

In *Hoskins*, the Texas Supreme Court addressed a split among the courts of appeals as to "whether the TAA permits vacatur of an arbitration award on common-law grounds not enumerated in the statute." 497 S.W.3d at 493. *Hoskins* involved a dispute over a family trust that culminated in the appointment of an arbitrator to obtain "resolution through arbitration pursuant to the provisions of the Texas

5

General Arbitration Act." *Id.* at 492. In an effort to overturn the trial court's confirmation of the arbitration award, the plaintiff argued that the award should be vacated on the common law ground that the arbitrator "demonstrated a manifest disregard of the law . . . ." *Id.* at 492–93.

Interpreting the TAA, the Court concluded that "[t]he statutory text could not be plainer: the trial court 'shall confirm' an award unless vacatur is required under one of the enumerated grounds in section 171.088." *Id.* at 494. Because an arbitrator's "manifest disregard of the law" is not a ground for vacatur enumerated in section 171.088, and "the TAA leaves no room for courts to expand on those grounds," the Court affirmed the judgment of the lower court. *Id.* at 491, 494.

In support of the proposition that arbitration awards that conflict with public policy may be vacated on common law grounds, Central Nissan relies on *Jefferson County v. Jefferson County Constables Association*, 546 S.W.3d 661 (Tex. 2018). In that case, the court affirmed the lower court's confirmation of an arbitration award stemming from the County's violation of its collective bargaining agreement with the deputy constables' association. *Id.* at 663. In its analysis, the Court observed that the TAA does not govern collective bargaining agreements. *Id.* at 665. Because the TAA was inapplicable, the Court reviewed the arbitrator's award under the common law. *Id.* In doing so, the court acknowledged that "the common law allows vacatur of an arbitration award if the arbitrator exceeds the scope of his authority or

the award 'clearly violates carefully articulated, fundamental [public] policy.'" *Id.* (quoting *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 239 (Tex. 2002)).

Central Nissan points to the fact that *Jefferson County* was decided after the Court decided *Hoskins*. It argues that because *Jefferson County* permitted vacatur of an arbitration award on common law grounds after the Court's holding in *Hoskins*, *Hoskins* was overruled by *Jefferson County*. However, *Jefferson County* and *Hoskins* differ in an important respect. *Jefferson County* involved an arbitration award stemming from the violation of a collective bargaining agreement which is not subject to the TAA. *Id.* Therefore, the Court's review of the award was conducted under the common law. *Id.* In *Hoskins*, however, the parties executed an agreement that called for arbitration subject to the TAA. *Hoskins*, 497 S.W.3d at 492. Consequently, the TAA was the governing law and the grounds for vacatur of the award were limited to those specifically enumerated in section 171.088.

Here, as in *Hoskins*, both parties agreed that arbitration would be governed by the TAA. Furthermore, both parties specifically agreed that the arbitration award "will be binding and not subject to appeal, except for the limited grounds set forth in Texas Civil Practice & Remedies Code section 171.088." Because the arbitration award in this case stems from an arbitration proceeding governed by the TAA, the statute, not common law, is controlling. The only grounds for vacatur of this

arbitration award are those enumerated in section 171.088. *See Hoskins*, 497 S.W.3d at 494. We overrule Central Nissan's first issue.

In its second issue, Central Nissan argues that the trial court erred in confirming the arbitration award because the award is contrary to Texas public policy as an employment-at-will state.

Texas has long adhered to the employment at-will doctrine.[1] *See E. Line & R.R.R. Co. v. Scott*, 10 S.W. 99, 102 (Tex. 1888). However, in *Sabine Pilot Service, Inc. v. Hauck*, the Court recognized a narrow exception to the doctrine for an employee discharged "for the sole reason that the employee refused to perform an illegal act." 687 S.W.2d 733, 735 (Tex. 1985). Under this exception, the plaintiff bears the burden "to prove by a preponderance of the evidence that his discharge was for no reason other than his refusal to perform an illegal act." *Id.* The *Sabine Pilot* doctrine applies only when an employee is "unacceptably forced to choose between risking criminal liability or being discharged from his livelihood." *Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723, 724 (Tex. 1990).

Central Nissan contends that Singleton's discharge does not fit within the *Sabine Pilot* exception. Specifically, it argues that for a discharged employee to be protected by *Sabine Pilot*, an employer must expressly request the employee to

---

[1] Employment for an indefinite term may be terminated at will and without cause. *See Winters v. Chronicle Publ'g. Co.*, 795 S.W.2d 723, 723 (Tex. 1990).

8

perform an illegal act. Central Nissan reasons that because it did not explicitly request that Singleton perform an illegal act, Singleton's actions essentially amount to internal private whistleblowing, which is not protected under *Sabine Pilot*. *See Garza v. Doctors on Wilcrest, P.A.*, 976 S.W.2d 899, 901 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

However, courts have held that an employee may assert a *Sabine Pilot* claim despite the fact that an employer fails to "directly confront an employee and make an affirmative statement that the employee will be terminated if he refuses to perform an illegal act." *Higginbotham v. Allwaste, Inc.*, 889 S.W.2d 411, 413 (Tex. App.—Houston [14th Dist.] 1994, writ denied). In *Higginbotham*, an employee for an asbestos abatement services company refused to hide material overstatements of his employer's quarterly profits. *See id.* at 412. The employee was subsequently fired and filed a wrongful termination claim. *Id.* at 412. In determining whether the employee's refusal to perform illegal acts provided a basis to prevail on a *Sabine Pilot* claim, the court observed that "[g]enerally, one who seeks the performance of an illegal act does so with subtlety and stealth." *Id.* at 416.

Similarly, in *Rescar, Inc. v. Ward*, a plant manager alerted his supervisors to environmental violations, including the illegal dumping of toxic chemicals. 60 S.W.3d 169, 174 (Tex. App.—Houston [1st Dist.] 2001, judgm't vacated w.r.m.). The manager refused to participate in these activities and was later fired by his

9

employer. *Id.* at 174, 177. The court concluded that "there was more than a scintilla of evidence in the record . . . that [the employee] was discharged for the sole reason he refused to perform one of these illegal acts." *Id.* at 178.

In *Garza*, an x-ray technician sued her former employer for wrongful termination after being discharged for alerting the Texas Board of Medical Examiners that one of her colleagues was performing x-rays on patients without proper certification and without the use of proper protective shielding. *Garza*, 976 S.W.2d at 900. After the jury found for the technician and awarded damages, the trial court granted the defense's motion for judgment notwithstanding the verdict. *Id.* On appeal, the court affirmed the lower court, finding that the *Sabine Pilot* exception did not apply because the technician "was not unacceptably forced to choose between risking criminal liability or being discharged from her livelihood." *Id.* at 901. Moreover, the technician failed to meet her burden "to prove by a preponderance of the evidence that her discharge was for no reason other than her refusal to perform an illegal act." *Id.*

The court's refusal to extend *Sabine Pilot* in *Garza* was not because the employer failed to explicitly request the technician to perform an illegal act. Rather, it was because the technician was not forced "to choose between risking criminal liability or being discharged from her livelihood." *Id.* Here, in contrast, Singleton's refusal to participate in an ongoing criminal insurance fraud perpetrated by

employees of Central Nissan directly resulted in his firing. Thus, even if the common law applied and permitted vacatur of Singleton's arbitration award for public policy reasons, Singleton presents a *Sabine Pilot* claim consistent with Texas's employment-at-will policy. Accordingly, we overrule Central Nissan's second issue.

## C. Frivolous Appeal

In his brief, Singleton requests that this Court impose sanctions on Central Nissan for filing a frivolous appeal. *See* TEX. R. APP. P. 45.

We may award just damages to a prevailing party if we objectively determine, after considering "the record, briefs, or other papers filed in the court of appeals," that an appeal is frivolous. *Id.*; *Woods v. Kenner*, 501 S.W.3d 185, 198–99 (Tex. App.—Houston [1st Dist.] 2016, no pet.). An appeal is frivolous when the record, viewed from the perspective of the advocate, does not provide reasonable grounds for the advocate to believe that the case could be reversed. *Smith v. Brown*, 51 S.W.3d 376, 381 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). The decision to grant appellate sanctions is a matter of discretion that an appellate court exercises with prudence and caution and only after careful deliberation. *Id.* And Rule 45 does not require the Court to award just damages in every case in which an appeal is frivolous. *Glassman v. Goodfriend*, 347 S.W.3d 772, 782 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

11

After a review of the record, briefing, and other papers filed in this Court, we deny Singleton's request for sanctions.  *See* TEX. R. APP. P. 45.

## Conclusion

We affirm the trial court's judgment.


                                        Russell Lloyd
                                        Justice

Panel consists of Justices Lloyd, Goodman, and Landau.

12